Two questions are submitted for determination: First, whether the relator, during the time that he possessed the powers and performed the duties of the office of superintendent of the insurance department, was entitled to the salary allowed by statute to that officer; second, whether it was the duty of the comptroller to issue his warrant to him for the payment of such salary in like manner as though he had been appointed to such office by the governor, etc., as provided by statute. It appears, from the facts agreed upon by the parties, that the superintendent resigned the office May 13th, 1872; that no appointment was made by the governor, etc., to such office until November 23d of that year, and that the appointee did not qualify and enter upon the duties of the office until the twenty-ninth of that month; that the relator, at the time of the resignation of the superintendant, was a clerk, employed in the office, and the one appointed by him to be his deputy; that the relator, immediately upon the resignation of the superintendent, assumed the powers and performed the duties of the office, and continued so to do until the 29th of November thereafter. The right of the relator to the salary claimed by him depends upon the construction of section 2 of chapter 366 of Laws of 1859. That section, among other things, provides that the chief officer of the department (thereby created) shall be denominated the superintendent of the insurance department; that he shall employ from time to time the necessary clerks to discharge such duty as he shall assign them, whose compensation shall *Page 78 
be paid to them monthly on his certificate and upon the warrant of the comptroller; that he shall appoint one of the said clerks to be his deputy, who shall possess the powers and perform the duties attached by law to the office of principal, during a vacancy in such office and during the absence and inability of his principal. That the superintendent and his deputy shall, within fifteen days after notice of their appointment, respectively take and subscribe the oath of office prescribed by the Constitution and file the same in the office of the secretary of state. It thus appears that the statute confers, in the case of a vacancy, upon the deputy all the powers, and imposes upon him all the duties, of the office of superintendent during its continuance. In short, it makes him to all intents and purposes acting superintendent for that time during which there is and can be no other superintendent. The act contemplates that there shall at all times be a person clothed with all the powers and subject to all the duties of the office of superintendent, and but one such person, and that there shall also be a clerk, designated as deputy, possessing the powers and subject to the duties of the office during the absence or inability of the principal to perform them, and but one such person. This provision is carefully made to avoid inconvenience to the public from want of a person so authorized. Upon a vacancy, all the powers of the superintendent are given to the deputy, and he is to perform all the duties. Among these powers and duties is the designation of a clerk as his deputy, to the end that there may be no failure of a person to discharge the duties, by the absence or inability of the acting superintendent to discharge them. This acting superintendent is as liable to be unable to discharge the duties of the office, from absence or inability, as one appointed thereto by the governor; and there is the same necessity for providing for such a contingency in case of the former as in that of the latter. Such provision is made in the case of the former by conferring upon him the powers and imposing upon him the duties of superintendent. This language clearly includes the power of designating a clerk to *Page 79 
act as his deputy, etc. This power being included in the language, and clearly necessary for the practical discharge of the duties of the office, we must assume that it was the intention of the legislature to confer it upon the acting superintendent during a vacancy. But it may be said that this assumption ought not to be made, as it was not contemplated that there would be a vacancy but for a brief period. This is mere speculation, and no weight, in construing the statutes, should be given to it. We have seen that the vacancy in the present case continued for more than six months, and there is nothing to prevent a much longer continuance. It may also be said that the deputy would, upon this construction, become the acting superintendent, authorized to appoint a deputy when there was no vacancy in the office, but a temporary absence or inability to perform its duties, as in these contingencies the powers and duties of the office devolve upon the deputy. But in these cases there is a superintendent in office, and we have seen that there can be but one at any time, and he has his deputy, and there can be but one at any time; hence it follows that in such cases the deputy does not become acting superintendent, clothed with all the powers and subject to all the duties of the office, but such only as are necessary to enable him to perform such acts as are necessary to be performed in his absence or inability to act, the superintendent being at the same time at liberty to perform all such duties as may be performed away from the office; or, in case of inability to act in some particular case, the deputy is to act in that case, while the superintendent acts in all others. To illustrate: Suppose the superintendent, absent from the office in the discharge of some duty pertaining to the office, for instance, the examination into the affairs of some insurance company or other duty, the deputy would be empowered as such to perform all the acts necessary to be performed at the office, but not other duties, some of which the principal himself might be engaged in the performance of. In short, the powers conferred and duties imposed upon the deputy, in case of absence or inability of the principal, *Page 80 
are limited to such as are thereby made necessary for the transaction of the business of the department. The powers and duties, not so necessary, still remain vested in the superintendent, and are to be exercised by him. But in case of a vacancy in the office, all its powers and duties at once devolve upon the deputy. There remains no other, vested with any of its functions. The deputy at once becomes acting superintendent, and his acts are, to all intents and purposes, those of superintendent. He is entitled to the emoluments of the office, the same as though appointed thereto by the governor, etc., as provided by statute. The duties and responsibilities are the same. His acts thereafter are regarded as those of superintendent, and not those of deputy. He is entitled to the salary of the former and not to that of the latter office. The statute precludes the idea that the same person can hold both offices, This would be my conclusion in the absence of any precedents sustaining it. But there are precedents which, though not judicial, I regard as entitled to be considered as decisive of the question under consideration. In the Constitution of the State, adopted in 1822, will be found the following provision: "In case of the impeachment of the governor, or his removal from office, death, resignation, or absence from the State, the powers and duties of the office shall devolve upon the lieutenant-governor for the residue of the term, or until the governor — absent or impeached — shall return or be acquitted." (Const. 1822, art. 3, § 6.) On the 11th of February, 1828, the office of Governor became vacant by the death of De Witt Clinton, the then incumbent of the office, and its powers and duties, under the above provision of the Constitution, devolved upon Nathaniel Pitcher, then lieutenant-governor. The question arose whether he was to be regarded, in the exercise of the powers and performance of the duties so vested in him, as acting governor, or in the performance of the contingent duties of lieutenant-governor, and, as a consequence, whether he was entitled to the salary of the former office, or the compensation given to the lieutenant-governor for his services as such. It was held *Page 81 
by William L. Marcy, then comptroller, that he was to be regarded as the acting governor, and entitled to the salary given by law to that officer. The same questions, under the same provision, again arose in 1829, upon the resignation of the office of governor by Martin Van Buren, and the powers and duties of the office devolving upon Enos T. Throop, then lieutenant-governor, and were decided in the same way by Silas Wright, then comptroller. It will be seen that these questions were identical with that in the present case. We surely shall not go far astray in following the precedents established by these able jurists, wise statesmen and rigid economists. I deem it scarcely necessary to refer to similar precedents in the government of the United States upon the devolution of the powers and duties of the presidential office upon Vice-President Filmore, upon the death of President Taylor, and upon Vice-President Johnson, upon the death of President Lincoln. This determines the second question submitted. The money for the payment of the salary of superintendent was appropriated by the legislature. To this salary the relator was entitled as acting superintendent.
The judgment must be reversed, and a judgment awarding a mandamus to the comptroller to issue his warrant to the relator for the payment of $1,967.27, with costs.
All concur; CHURCH, Ch. J., and ALLEN, J., not voting.
Judgment reversed, and judgment accordingly.