[No. 1470.]

STATE OF NEVADA, EX REL. REINHOLD SADLER, RELATOR, v. C. A. LaGRAVE, STATE CONTROLLER, RESPONDENT.

CONSTITUTIONAL LAW—GOVERNOR—LIEUTENANT-GOVERNOR TO BECOME ACTING GOVERNOR, WHEN—SALARY OF.—Under art. V, sec. 18, of the state constitution, providing that, upon the death of the governor, the powers and duties of the office shall devolve upon the lieutenant-governor for the residue of the term, the lieutenant-governor, upon the death of the governor, becomes acting governor, and entitled to receive the salary attached to that office.

ORIGINAL PROCEEDING. Application for writ of mandate on the relation of Reinhold Sadler, against C. A. LaGrave, State Controller. Granted.

The facts sufficiently appear in the opinion.

*James R. Judge,* for Relator:

I. The powers and duties of the office of governor of the state of Nevada having, by reason of the death of Governor John E. Jones, on April 10, 1896, devolved upon relator, he is entitled to receive the salary provided by law to be paid to the governor. (*Baxter* v. *Brooks,* 29 Ark. 173; *Chadwick* v. *Earhart,* 11 Or. 389.)

II. The identical question at issue here came twice before the comptroller of the state of New York, under a section of the constitution of that state (Art. III, sec. 6, Const. N. Y.), of which section 18 of article V of the constitution of the state of Nevada is a verbatim copy, and in both instances it was held, by the comptroller, that the lieutenant-governor,

upon whom the powers and duties of the office of governor devolved, was entitled to the salary given by law to that officer. These decisions of the comptroller were referred to with approval by the court of appeals of New York, in the case of *People* v. *Hopkins*, 55 N. Y. 74. To the same effect is: *U. S.* v. *Bassett*, 2 Story, 389; *U. S.* v. *Morse*, 3 Story, 87; *Sleigh* v. *U. S.*, 9 Ct. Claims, 369; *Merriam* v. *Clinch*, 6 Blatch. 5.

III. The powers and duties of the office of governor, which have devolved upon relator, and with which he became clothed upon the death of Governor Jones, are not only such powers as are necessary to enable him to discharge his duties properly, but the right and power to demand and receive the salary attached by law to the office. (*Merriam* v. *Clinch*, 6 Blatch. 5.)

*Robt. M. Beatty*, Attorney-General, for Respondent:

I. Respondent contends that relator, as lieutenant-governor, did, upon the death of Governor Jones, remain lieutenant-governor, but then became and still is such lieutenant-governor, with the powers and duties of governor devolving upon him. (Const. of Nev., art. V, sec. 18.)

II. In addition to the provisions of the last-named section, our constitution contemplates the existence of a "vacancy" in the office of governor (Const. Nev., art. V, sec. 17), and provision is made in terms for such a contingency. Further, it is a noticeable fact that under this constitution in no case can a vacancy in the office of lieutenant-governor occur, nor is there any provision for a succession to the office of lieutenant-governor by it or our statutes in the event of any succession by the incumbent of that office to the office of governor.

III. The cases cited by respondent under the constitution of the state of New York, adopted in 1821, appear to be no authority for our guidance in this proceeding, for the reason that our statutes provide a salary or, more properly speaking, a per diem for the lieutenant-governor when acting as governor (Stats. 1891, p. 104) as exact and certain as the salary of the governor; while in the state of New York, in the year 1829, when those cases decided that he should

receive the salary provided for the governor, there presumably was no salary or per diem fixed by law for him when acting as governor when he was so acting, either temporarily or permanently.

By the Court, BELKNAP, J.:

At the general election held in the month of November, 1894, John E. Jones was elected governor of the state and Reinhold Sadler was elected lieutenant-governor. Governor Jones died on the 10th day of April, 1896. Thereafter the relator assumed· the duties of the gubernatorial office, and, before the institution of this proceeding, demanded of defendant, as controller, a warrant upon the treasurer for the amount of his salary as the acting governor from the 11th day of April, 1896, to the 30th day of the same month. Defendant declined to draw the warrant as requested, although there is an unexpended balance in the treasury appropriated for the payment of the salary of the governor.

The provision of the constitution bearing upon the subject is as follows: "In case·of the impeachment of the governor, or his removal from office, death, inability to discharge the duties of the said office, resignation or absence from the state, the powers and duties of the office shall devolve upon the lieutenant-governor for the residue of the term, or until the disability shall cease." * * *

It is claimed, on the part of respondent, that, when the contingency above mentioned arises, by which the powers and duties of the office of governor devolve upon the lieutenant-governor, no change occurs in the position of that officer. He remains lieutenant-governor, exercising the powers and duties of the governor, but not entitled to the salary attached to the office.

An analogous question was considered in the case of *Church v. Hopkins*, 55 N. Y. 74. The laws of the state of New York require the superintendent of the insurance department to appoint a deputy from among his clerks, who shall possess the powers and perform the duties attached by law to the office of superintendent, during a vacancy in the office. Relator had been appointed such deputy. His principal had resigned, and the powers and duties of the office had devolved

upon him under the statute. He sought to compel the controller to issue a warrant for the salary allowed by the statute to the superintendent. The court determined that he was entitled to it. In its opinion the court said: "The statute confers, in the case of a vacancy, upon the deputy all the powers and imposes upon him all the duties of the office of the superintendent during its continuance. In short it makes him to all intents and purposes acting superintendent for that time during which there is no other superintendent. The act contemplates that there shall at all times be a person clothed with all the powers and subject to all the duties of superintendent, * * * and that there also shall be a clerk, designated as deputy, possessing the powers and subject to the duties of the office during the absence and inability of the principal to perform them. * * * This provision is carefully made to avoid inconvenience to the public for want of a person so authorized. Upon a vacancy all the powers of the superintendent are given to the deputy, and he is to perform all the duties. Among these powers and duties is the designation of a clerk as his deputy, to the end that there may be no failure of a person to discharge the duties by the absence or inability of the acting superintendent to discharge them. This acting superintendent is as liable to be unable to discharge the duties of the office from absence or inability as one appointed thereto by the governor, and there is the same necessity for providing for such a contingency in case of the former as in that of the latter. Such provision is made in the case of the former by conferring upon him the powers and imposing upon him the duties of the superintendent. This language clearly includes the power of designating a clerk to act as his deputy, etc. This power, being included in the language and clearly necessary for the practical discharge of the duties of the office, we must assume that it was the intention of the legislature to confer it upon the acting superintendent during a vacancy."

Again at page 80: "In case of a vacancy in the office, all its powers and duties at once devolve upon the deputy. There remains no other vested with any of its functions. The deputy at once becomes acting superintendent, and his acts are, to all intents and purposes, those of superintendent.

He is entitled to the emoluments of the office, the same as though appointed thereto by the governor, etc., as provided by statute. The duties and responsibilities are the same. His acts thereafter are regarded as those of superintendent, and not those of deputy. He is entitled to the salary of the former and not to that of the latter office. The statute precludes the idea that the same person can hold both offices. This would be my conclusion in the absence of any precedents sustaining it. But there are precedents which, though not judicial, I regard as entitled to be considered as decisive of the question under consideration. In the constitution of the state, adopted in 1822, will be found the following provision: 'In case of the impeachment of the governor, or his removal from office, death, resignation or absence from the state, the powers and duties of the office shall devolve upon the lieutenant-governor for the residue of the term, or until the governor—absent or impeached—shall return or be acquitted.' (Const. 1822, art. III, sec. 6.) On the 11th of February, 1828, the office of governor became vacant by the death of De Witt Clinton, the then incumbent of the office, and its powers and duties, under the above provision of the constitution, devolved upon Nathaniel Pitcher, then lieutenant-governor. The question arose whether he was to be regarded, in the exercise of the powers and performance of the duties so vested in him, as acting governor, or in the performance of the contingent duties of lieutenant-governor, and as a consequence, whether he was entitled to the salary of the former office, or the compensation given to the lieutenant-governor for his services as such. It was held by William L. Marcy, then comptroller, that he was to be regarded as the acting governor, and entitled to the salary given by law to that officer. The same questions, under the same provision, again arose in 1829, upon the resignation of the office of governor by Martin Van Buren, and the powers and duties of the office devolving upon Enos T. Throop, then lieutenant-governor, and were decided in the same way by Silas Wright, then comptroller. It will be seen that these questions were identical with that in the present case. We surely shall not go far astray in following the precedents established by these able jurists, wise statesmen and rigid economists."

*Merriam* v. *Clinch*, 6 Blatch. 5, was a contest for the emoluments of the office of collector of the customs at the port of New York between the administrator of the estate of Preston King, the late collector, and Mr. Clinch, a special deputy, appointed by Mr. King. The twenty-second section of the act of congress of March 2, 1799, authorizes the collector to appoint a special deputy upon whom, in case of the death of the collector, the duties and authorities of the office of collector shall devolve, and for whose conduct the estate of the deceased collector shall be answerable. The analogy between the provision of the constitution of the United States upon the devolution of the powers of the presidential office and a similar provision in the twenty-second section of the statute providing for the devolution of the powers and authorities of the collector upon the deputy was noticed. · The court said: " The constitution of the United States (art. II, sec. 6) provides that ' in case of the removal of the president from office, or of his death, resignation or inability to discharge the powers and duties of the said office, the same shall devolve upon the vice-president.' The provision, in this section of the constitution, that the powers and duties of the office of president shall devolve upon the vice-president, is identical, in legal effect, with the provision, in the twenty-second section of the act of 1799, that the authorities and duties vested in the collector shall devolve on his deputy. Three times since the adoption of the constitution the president has died, and, under the provision referred to, the powers and duties of the office of president have devolved upon the vice-president. All branches of the government have, under such circumstances, recognized the vice-president as holding the office of president, as authorized to assume its title, and as entitled to its emoluments."

In *Chadwick* v. *Earhart*, 11 Or. 389, one of the questions was whether under the constitution of Oregon the secretary of state, upon whom the duties of the office of governor devolve upon the death of the governor, had a right to the salary of the office. The constitution of Oregon provides that " in case of the removal of the governor from office, or of his death, resignation, or inability to discharge the duties of the office, the same shall devolve on the secretary of state;

and in case of the removal from office, death, resignation or inability both of the governor and secretary of state, the president of the senate shall act as governor until the disability be removed or a governor be elected." It was claimed that the duties of the office of governor became annexed to the office of secretary of state and were discharged as duties incident to the latter office. The same contention, *mutatis mutandis,* is made here. The court said: " This position seems to require: (1) Either that the office of governor should continue vacant during the time the secretary discharges its duties, and that such duties be in some way performed by the secretary of state, as such, consistently with a condition of vacancy; or (2) that the office be filled and yet he who fills it be in nowise governor, but continue to be merely secretary of state. In the first place, it is not shown how an office can be vacant, and yet there be a person, not the deputy, or *locum tenans,* of another, empowered by law to discharge the duties of the office and who does in fact discharge them. It is not explained how, in such a case, the duties can be separated from the office, so that he who discharges them does not become an incumbent of the office. And, in the second place, how a person can fill the office of governor without being governor. It is the function of a public officer to discharge public duties. Such duties constitute his office. Hence, given a public office and one who, duly empowered, discharges its duties, and we have an incumbent in that office. Such is the case here. The secretary of state, by force of the function cast upon him, became governor, and, consequently, entitled to the salary appertaining to the office."

In the statute of March 21, 1891, fixing the salaries of state officers (Stats. 1891, p. 104), the pay of the lieutenant-governor when acting as governor is fixed at $8 per day. From the fact that the legislature appropriated the sum of $1,000 only for this purpose, I am of opinion that this was intended for compensation when the governor was temporarily absent from the state, and not for the purpose of fixing the compensation when the duties of the office devolve upon the lieutenant-governor upon the death of the governor.

Relator, as acting governor, is entitled to the salary attached to the office of governor.

Let the writ issue.

BIGELOW, C. J., concurring:

I concur in the judgment, but do not wish to be understood thereby as holding that, upon the death of the governor, the lieutenant-governor becomes governor in the full sense of the term. Justice BELKNAP's opinion might possibly be so construed, but it seems to me that section 17 of article V of the constitution contemplates that, upon the governor's death, his office is to remain vacant. It reads: "If, during a vacancy of the office of governor, the lieutenant-governor shall be impeached, displaced, resign, die, or become incapable of performing the duties of the office, or be absent from the state, the president *pro tempore* of the senate shall act as governor until the vacancy be filled or the disability cease."

If, upon the death of the governor, the lieutenant-governor, *ipso facto*, and instantly, becomes governor, then there could never be a vacancy in the office of governor, the lieutenant-governor could never be impeached, displaced, etc., during such vacancy, and the conditions upon which the president *pro tem.* of the senate is to act as governor could never occur.

But, in the view I take, it is unnecessary to decide the point, and I simply suggest it by way of caution, for, however it may be, the powers of the office do undoubtedly devolve upon the lieutenant-governor in every sense except as expressly or impliedly limited by the constitution. As to everything else, he virtually becomes governor. He fills the office, not temporarily, as he would in case of the governor's absence from the state, but permanently, and he becomes, at least, permanent acting governor for the residue of the term. Whatever those constitutional limitations may be, there is none upon his right to draw the salary of governor, and, as there is not, and he has the power to do everything else that the governor can do, there seems no good reason why he cannot also draw the salary. In my judgment, there is but one serious question as to this view, and that is that, if he can draw the governor's salary when the governor's office is permanently vacant, as it is the same section of the constitution

that provides for both permanent and temporary vacancies, why can he not do the same in case of the governor's absence from the state, or his temporary disability to discharge the duties of the office? To this it may, however, be answered that possibly he could draw it, but, if not, that there is, in reason, a wide difference between a temporary vacancy and one that is permanent. In the one case there is another person still living entitled to the salary, and both cannot have it, while in the other there is not.

Another reason that may be offered for this conclusion is that it is a general principle of justice and right that, where one legally performs the duties of an office, he should be entitled to the emolments thereof. Admitting that there is some doubt, arising upon the language of the constitution, whether that instrument intended the relator to have the salary of the office under the circumstances existing here, this equitable principle, together with the construction that has been put upon substantially similar language where the vice-president has succeeded to the office of president, and where lieutenant-governors and other officers have succeeded to the office of governor, by so many able statesmen and judges, would lead me to feel, in the absence of a clear declaration to the contrary, that the doubt should be resolved in his favor.

But it is said that, if the relator is only acting governor, then Stats. 1891, 104, which provide that, when so acting, he shall receive $8 per day, instead of the governor's salary, is applicable. At first blush, this seems to be the case, but I think a little closer examination will show that that statute was not intended to provide for such a contingency as now exists. As is perhaps the case everywhere, our governors have been in the habit of being absent from the state more or less, at which times the lieutenant-governor, of course, becomes, for the few days of his absence, the acting governor. By Stats. 1881, 43 (Gen. Stats., sec. 3295), it was provided that "the lieutenant-governor, when acting as governor, in the absence or incapacity of the governor, shall receive $14 per day." By Stats. 1883, 41 (Gen. Stats. 1777), the lieutenant-governor was made *ex officio* adjutant-general and state

librarian, and it was provided that " for the services he shall render as such, and while acting as governor in the absence of the governor from the state, he shall receive an annual salary of $2,700." By Stats. 1891 these offices were again taken from him, and Stats. 1891, 104, above mentioned, was enacted, fixing his pay at $8 per day. From this statement it will be seen that when, by the act of 1881, he was to be paid a per diem, it was for " acting as governor during the absence or incapacity of the governor," both, presumably, temporary occasions, and when, in 1883, he was given a salary, it was for his *ex officio* services and for " acting as governor in the absence of the governor from the state," which, of course, would always be temporary. These acts are *in pari materia* with the act of 1891, and must all be construed together in arriving at what was intended by the latter. As the others were clearly intended for only temporary occasions, it is fair to presume the last was also. The same inference can be drawn from the language of the act of 1891. Though not, like the others, expressly limited to temporary occasions, it is only to those, the duration of which must naturally be uncertain until after the event, that a *per diem* payment is appropriate, while it would be absurd to so regulate the pay of a permanent officer. There is no other officer in the state who is paid by the day—no other who is not paid a yearly salary, and I cannot suppose it was the intention to make the permanent acting governor an exception.

BONNIFIELD, J., concurring:

I am of opinion that the relator is entitled to the salary provided for the governor, and therefore concur in the opinion that the writ prayed for should be granted.