# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF WYOMING

APRIL TERM, 1903.

THE STATE OF WYOMING EX REL. FENIMORE CHATTERTON, ACTING GOVERNOR, AND SECRETARY OF STATE, v. LEROY GRANT, AS STATE AUDITOR.

PLEADING—MANDAMUS—OFFICE AND OFFICERS—SALARIES—SALARY OF SECRETARY OF STATE AS ACTING GOVERNOR.

1. A demurrer to a petition in mandamus admits all the material allegations that are well pleaded.

2. An officer who holds two or more separate and distinct offices, not incompatible with each other, to which compensation is attached, may recover the compensation provided by law for each office, in the absence of statute expressly or by necessary implication forbidding it.

3. When, upon the death of the Governor, the person occupying the office of Secretary of State not only continues to fill and exercise the duties of that office, but also, pursuant to law, assumes and exercises the powers and duties of the executive office as Acting Governor, he is entitled, while performing the duties of both offices, to receive the salary provided by law and appropriated for each office.

[Decided August 20, 1903.]          (73 Pac., 470.)

ORIGINAL proceeding in mandamus instituted by Fenimore Chatterton, Secretary of State and Acting Governor, to require LeRoy Grant, as State Auditor, to issue and deliver to the relator warrants in payment of salary claimed to be due him as Secretary of State and also as Acting Governor for the month of May, 1903. The cause was heard on demurrer to the petition.

*P. B. Coolidge,* for relator.

This is not a suit against the State so as to be obnoxious to the rule that a state cannot be sued in her own courts by her citizens without her permission. (State v. Heard, 18 So., 746; State ex rel. v. Jumel, 30 La. Ann., 863; Marbury v. Madison, 1 Cranch, 177; Kendall v. U. S., 12 Pet., 608; Board, &c., v. McComb, 92 U. S., 541.) The Auditor may be compelled by mandamus to issue the warrants if the relator is held to be entitled thereto. (High Ex. Leg. Rem., Secs. 100, 101, 105; State v. Gamble, 13 Fla.; 9; Bryan v. Cattell, 15 Ia., 538; Turner v. Meloney, 13 Cal., 621; Nichols v. The Comptroller, 4 Stew. & Port., 154; State ex rel. v. Heard, 47 La. Ann., 679.) The relator is entitled while performing the duties of Secretary of State and also the duties of the office of Governor, as Acting Governor, to the salary fixed and provided by law for both offices. (Chadwick v. Earhart, 11 Ore., 389; State ex rel. Sadler v. Lagrave, 23 Nev., 216; U. S. v. Saunders, 120 U. S., 594; U. S. v. Brindle, 110 U. S., 688; Preston v. U. S., 37 Fed., 417; Converse v. U. S., 21 How. (U. S.), 463; State ex rel. v. Sadler, 47 Pac., 450; State v. Roddle, 81 N. W., 980 (S. D.); State ex rel. v. Walker, 97 Mo., 162; McCauley v. Sch. Dist., 133 Pa. St., 493; U. S. v. McDaniel, 7 Pet., 1; U. S. v. Rilley, id., 18; U. S. v. Fellerborn, id., 28; Milnor v. U. S., 16 id., 221; Badeau v. U. S., 439; Love v. Baehr, 47 Cal., 364; *In re* Conrad, 15 Fed., 641; Collins v. U. S., 15 Ct. of Cl., 22; Smith v. Waterbury, 54 Conn., 174; People v. Hopkins, 55 N. Y., 74; People v. Budd, 45 Pac., 1060 (Cal.); State v. Heller, 42 Atl., 155.)

One who succeeds to all the powers and duties of Governor, the regular incumbent having died, becomes, in law and fact, Governor. The Secretary of State is required by statute to "act as Governor." The duties of the executive office are not added to those of the office of Secretary of State; but the person who is at the time of the Governor's death Secretary of State is named as the person to become Governor. He administers not one, but two offices. The duties of each are separate and distinct from the other. The office of Governor is not vacant, because it is occupied by the person designated by law.

*J. A. Van Orsdel,* Attorney General, for the respondent.

The Secretary of State does not become the successor of the deceased Governor. His successor is elected by the people to fill the vacancy. The constitution does not provide, as in some states, that the office of Governor shall devolve upon the person designated to perform its duties, but only that he shall act as Governor until the vacancy is filled. He is merely performing the duties of Governor temporarily as part of the duties of his office of Secretary of State. (U. S. v. Smith, 27 F. C., 1139; Clifford v. Heller, 42 Atl., 155.) The action of the Legislature upon the resignation of Governor Warren in 1890, in enacting a law providing for a Chief Clerk for the Secretary of State, was evidently intended to relieve the Secretary of State from performing double duty. Had it been intended that he should draw the Governor's salary, the Legislature would have said so. On the contrary, the usual appropriation for salary of Governor was omitted, thereby construing the constitutional provisions to mean that, until a successor to the deceased Governor should be elected, there was and would be a vacancy in the office.

POTTER, JUSTICE.

The sole question involved in this case is whether the relator is entitled to receive the salary provided and appro-

priated by law for both the offices of Governor and Secretary of State.

From the petition herein, it appears that at the general election held November 4, 1902, DeForest Richards was elected to the office of Governor of the State of Wyoming for the term of four years from the first Monday in January, 1903, and on said first Monday in January, 1903, to-wit, January 5, he duly and regularly qualified as such Governor and entered upon the duties of such office. He died April 28, 1903, thereby causing a vacancy in said office, to be filled in the manner required by law.

At the same general election the relator, Fenimore Chatterton, was elected to the office of Secretary of State for the same term of four years; and he duly qualified as such, and entered upon the discharge of the duties of that office, on said first Monday in January, 1903, and continues to occupy said office and to perform the duties thereof.

Upon the death of Governor Richards, and on the date thereof, the relator, as required by statute, issued a proclamation announcing the death of the Governor, and that, as is provided by Section 6 of Article 4 of the Constitution of said State, and Section 50 of the Revised Statutes, he had assumed and entered upon the duties of Governor of the State, and the allegation of the petition is that on said date said relator did assume and enter upon the duties of Governor, and has continued to fill said office and act as Governor (in addition to his duties as Secretary of State), exercising all the powers and performing all the duties of that office. It is alleged that the relator is eligible to the office and not under impeachment; and that his assumption of the office having occurred more than twenty days before the next general election of county officers, the powers and duties of Governor will devolve upon the relator until the next general election, which will occur November 8, 1904.

It is alleged that the salaries of both the Governor and Secretary of State for the year 1903 have been appro-

priated by the Legislature and are in the Treasury of the State, except the monthly installments for January, February, March and April, which have been already disbursed. That on the first day of June, 1903, the relator presented to the respondent, the duly elected and qualified Auditor of the State, an itemized account, duly verified as required by law, showing that there was due relator the sum of $208.33, his salary as Acting Governor for the month of May, 1903, and the further sum of $166.66, his salary as Secretary of State for the same month, and he then and there demanded of said Auditor that he draw his warrant on the State Treasurer for said amounts. Thereupon, the Auditor refused to draw a warrant for the payment of said account, and endorsed on the statement thereof his refusal, and the reasons therefor, as follows: "It is understood that this voucher is presented, and that my refusal to pay the same is made for the purpose of having the Supreme Court of the State of Wyoming decide the question whether or not the Secretary of State is entitled to receive two salaries, the salary of Governor as Acting Governor and the salary of Secretary of State. In order that this question may be settled, I hereby refuse payment."

The prayer of the petition is that a writ of mandamus issue commanding the Auditor to issue and deliver to the relator his two warrants on the Treasurer for the respective amounts claimed. An alternative writ of mandamus was allowed; and the petition is met by a general demurrer, upon which the cause has been heard and must be determined. The demurrer admits all the material allegations that are well pleaded; and doubtless the facts are accurately set forth. The demurrer has been deemed by counsel to raise the only question at issue, viz., the right of relator to the salaries of the two offices. The material constitutional provisions relating to the office of Governor and his compensation thereof are as follows: "The executive power shall be vested in a Governor, who shall hold his office for the term of four (4) years and until his successor is elected and qualified." · (Art. IV, Sec. 1.)

"If the Governor be impeached, displaced, resign or die, or from mental or physical disease or otherwise become incapable of performing the duties of his office, or be absent from the State, the Secretary of State shall act as Governor until the vacancy is filled or the disability removed." (Sec. 6.)

"Until otherwise provided by law, the Governor shall receive an annual salary of two thousand five hundred dollars, the Secretary of State, State Auditor, State Treasurer and Superintendent of Public Instruction shall each receive an annual salary of two thousand dollars, and the salaries of any of the said officers shall not be increased or diminished during the period for which they were elected, and all fees and profits arising from any of the said offices shall be covered into the State Treasury." (Sec. 13.)

Sections 4, 5, 7, 8 and 9 of the said article prescribe the duties of the office of Governor. It is unnecessary for the purpose of this opinion to recite those duties in detail; but it may be well to say that the Governor is, by the constitution, made commander in chief of the military forces of the State, and it is provided that he may call out the same to execute the laws, suppress insurrection and repel invasion. He may convene the Legislature on extraordinary occasions. He is required to transact all necessary business with the officers of the Government, civil and military, and to expedite all such measures as may be resolved upon by the Legislature and see that the laws are faithfully executed. He is given power to remit fines and forfeitures, to grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of impeachment. He is authorized in case of a vacancy in public office to fill the same by appointment, where no other mode of filling the vacancy is provided by law. Every bill passing the Legislature must be presented to him before it becomes a law; and, if approved by him, he is required to sign it. He is given a veto power over legislative measures.

After specifically prescribing a number of the duties of the office of Governor, it is provided by Section 12 of the same article as follows: "The powers and duties of the Secretary of State, of State Auditor, Treasurer and Superintendent of Public Instruction shall be as prescribed by law." And the First Legislature of the State proceeded to define the duties of Secretary of State. (R. S., Secs. 54-69.) None of the duties of the office of Governor were thereby imposed upon the Secretary of State, nor was any reference made therein to the duty of such officer to act as Governor; and it is obvious that the duties and powers of the office of Governor do not ordinarily pertain to the office of Secretary of State.

The statutory provisions on the subject of succession in the office of Governor are as follows: "In case of the removal, death, resignation or inability of the Governor of the State of Wyoming, the Secretary of State, or if there be none, or in case of his removal, death, resignation or inability, then the President of the last Senate, or if there be none, or in case of his removal, death, resignation or inability, then the Speaker of the last House of Representatives, or if there be none, or in case of his removal, death, resignation or inability, then the State Auditor, or if there be none, or in case of his removal, death, resignation or inability, then the State Treasurer shall act as Governor until the disability of the Governor is removed, or a Governor shall be elected." (R. S., Sec. 50.)

"Whenever the powers and duties of the office of Governor of the State of Wyoming shall devolve upon any of the persons named in the foregoing section, as therein provided, the person upon whom such duties shall devolve shall issue a proclamation to the effect that the person theretofore an incumbent in said office of Governor, naming him, has ceased to act as such, naming the reason, and stating that such person succeeding to the duties and powers of such office has assumed the duties and powers thereof." (R. S., Sec. 51.)

"Whenever the powers and duties of the office of the Governor of the State of Wyoming shall devolve upon a person, as hereinbefore provided, the person acting as Governor shall continue to act as Governor, as aforesaid, until the end of the term of the Governor; *Provided,* such assumption of office is made as aforesaid less than twenty days before the next general election of county officers, preceding the next ensuing general election for state officers; but should such assumption be made as aforesaid previous to twenty days before a general election for county officers, then, and in that case, the person acting as Governor, as aforesaid, shall issue an additional proclamation calling for the election of a Governor to fill the unexpired term, which election shall take place at the same time as the general election for county officers, and such election, together with the returns and canvass thereof, shall be conducted in all respects as though it was an original election for Governor. When the State Canvassing Board shall have canvassed the vote of the election as aforesaid, and in the manner provided by law, declared a person at such election to be elected as Governor, such person shall, within thirty days after such canvass, or as soon thereafter as possible, qualify and assume the duties and powers of Governor, and shall be the Governor of the State of Wyoming for the remainder of the unexpired term of Governor." (R. S., Sec. 52.)

"The foregoing provisions shall only apply to persons who are eligible to the office of Governor of the State of Wyoming under the Constitution of the State of Wyoming, and who are not under impeachment by the House of Representatives of the State of Wyoming, at the time the powers and duties shall devolve upon them, respectively." (R. S., Sec. 53.)

These provisions were enacted by the First State Legislature, under the following title: "An act to provide for an Acting Governor in case of the removal, death, resignation or inability of the Governor, and to provide for the election of his successor."

Outside the constitutional provisions rendering certain officers ineligible to hold another office during the term for which they may respectively have been elected, there is no statute of this State prohibiting a person from holding and exercising the duties of two offices that are not incompatible, nor if legally holding such offices from receiving the compensation that is attached to each by law. It certainly cannot be held that the offices of Governor and Secretary of State are incompatible in the sense that the same person, if Secretary of State, cannot legally act in the dual capacity, and perform the duties of each office, upon the death, disability or resignation of the Governor, since the constitution and statutes expressly require it. No question of compatibility is involved. Whether the same person could be lawfully elected to both offices is not before us for consideration. That contingency will hardly occur.

The situation that confronts us is that the law designates the Secretary of State in a case like the present to act as Governor. And he will be required to so act until after the next general election that will not occur until November, 1904. During that period all the powers of the Governor and all the duties of that responsible office will devolve upon him. He cannot escape them any more than one regularly chosen to the office. In the meantime, he has all the powers, and is subject to all the responsibilities, attaching to the office of Secretary of State. There is no express provision of the statute entitling him to the salary of the office of Governor, nor, as already indicated, is there any provision expressly forbidding its payment to him.

The relator, being the regularly elected and qualified Secretary of State, it must be conceded that he is entitled to receive the salary provided by law to be paid to that officer. In the absence of statute expressly or by necessary implication depriving him of the compensation belonging to that office upon assuming the powers and duties of Governor, he would have a right to it, even if permitted to draw the salary of the other office. In view of our statutes, or

rather the absence of statutory provision on the subject, we cannot conceive of any principle upon which the salary attaching to the office of Secretary of State can be denied him, whatever may be his right to the compensation provided by law for the office of Governor. It seems clear and reasonable that if he is found entitled to receive the salary of the executive office, he will necessarily be entitled to the salaries of both offices.

It is a general principle that an officer who holds two or more separate and distinct offices, not incompatible with each other, to each of which compensation is attached, may recover the compensation provided by law for each office. (Mechem on Pub. Off., 859.) In considering the case of a person seeking the recovery of salary claimed to be due him as clerk of a committee in Congress, who had during part of the period also occupied a position as clerk in the office of the President, and the effect of certain sections of the statute prohibiting double or extra compensation, the Supreme Court of the United States said:

"We are of the opinion that, taking these sections all together, the purpose of this legislation was to prevent a person holding an office or appointment, for which the law provides a definite compensation by way of salary or otherwise, which is intended to cover all the services which, as such officer, he may be called upon to render, from receiving extra compensation, additional allowances, or pay for other services which may be required of him either by act of Congress or by order of the head of his department, or in any other mode, added to or connected with the regular duties of the place which he holds; but that they have no application to the case of two distinct offices, places or employments, each of which has its own duties and its own compensation, which offices may both be held by one person at the same time. In the latter case he is, in the eye of the law, two officers, or holds two places or appointments, the functions of which are separate and distinct, and, according to all the decisions, he is in such case entitled

to recover the two compensations. In the former case he performs the added duties under his appointment to a single place, and the statute has provided that he shall receive no additional compensation for that class of duties unless it is so provided by special legislation." (United States v. Saunders, 120 U. S., 126.)

In the case of Converse v. United States, 21 How., 463, the court was called upon to construe various provisions of statute limiting the right of certain officers to additional compensation; and with reference to some of them it was said: "But they can by no fair interpretation be held to embrace an employment which has no affinity or connection, either in its character or by law or usage, with the line of his official duty, and where the service to be performed is of a different character and for a different place, and the amount of compensation regulated by law," but it was held that, as the services for which compensation was claimed were foreign to the regular official duties of the officer, he was entitled to recover; the compensation to be paid for such services having been fixed by law, and the money appropriated to pay it.

Upon the general principle above stated, compensation for services rendered in the discharge of the duties of both offices were allowed one occupying the position of Chief Supervisor of Elections and also United States Commissioner. (In re Conrad, 15 Fed., 641.) And the two duties of crier and messenger, although separate offices, were held not incompatible, and where the same person held both offices he was allowed the compensation of both. (Preston v. United States, 37 Fed., 417.) Where the City Treasurer was required by law to act ex-officio as School Treasurer, giving bond for each office, and taking a separate oath of office for each, he was held to be entitled not only to the salary of his office as City Treasurer, but also to the salary or compensation of School Treasurer. (Scranton Sch. Dist. v. Simpson, 133 Pa. St., 202.) It appearing in that case that a statute had been enacted providing that

the City Treasurer should be ex-officio School Treasurer, it was held that the latter office had not been abolished, but that the statute merely designated the person who should fill it.

It was held in Missouri, where an appropriation was made by law for the payment of compensation to members of the State Board of Equalization, that the Secretary of State, who was constituted a member of the board by the constitution, was entitled to compensation for services rendered by him in that capacity. (State ex rel. v. Walker, 97 Mo., 162.) And in South Dakota, where the Secretary of State was, under the law, a member of the brand and mark committee, and the law provided a compensation to be paid each member, said officer was held entitled to such compensation, in addition to his salary as Secretary of State. (State v. Roddle, 81 N. W., 980. See also State ex. rel. v. LaGrave (Nev.), 48 Pac., 193; Badeau v. U. S., 130 U. S., 439; Love v. Baehr, 47 Cal., 364.)

The Attorney General has filed a brief herein in support of the demurrer, and he presents an able argument against relator's claim. We do not understand that he disputes the general principle, but his contention is that in acting as Governor, the relator is but performing his duty as Secretary of State. The argument is that the duty is one imposed upon the Secretary of State, and is not foreign to the duties of that office; that his situation is not analogous to the case of a Lieutenant Governor who assumes the office of Governor in case of a vacancy in that office through the death or resignation of the regularly chosen incumbent thereof; that the relator does not become the successor of the deceased Governor, and is not, in fact, Governor, but simply acts in that capacity until, in obedience to the mandate of the statute, a successor may be regularly elected by the people. It is even argued that a vacancy continues to exist, and will so continue until some person is chosen at the next election to serve the balance that may remain of the unexpired term. And that in the meantime the State is and will be without a Governor.

In this connection it should be remembered that the stat-ute providing for succession in the office of Governor uses precisely the same language in designating the various officers or persons who shall in certain prescribed contingencies act as Governor. No different words are employed in describing the duty of President of the Senate, or Speaker of the House, upon the occurrence of the event that would require either of them to assume the duties of Governor. It is evident that the powers and rights of either would not be in any way superior to or different from the powers and rights of the relator, under like circumstances. If the relator does not occupy the office of Governor, but merely executes the duties of Secretary of State in assuming the responsibilities and powers of Governor, then it would seem that the same thing would be true of the President of the Senate and Speaker of the House, and that, should either of them be required to act as Governor, he would be merely performing certain duties added, for the time being, to his office. And it would follow that, although the law has provided no compensation to be paid to those officers except during a session of the Legislature, they would not be entitled to the salary of the Governor, or any other compensation, until the Legislature should make further provision.

In this case we are not concerned with a mere temporary disability of the Governor, or his temporary absence from the State, and the occasional assumption of his duties by another while he continues to occupy the office, and draw the salary thereof; nor are we called upon to consider what the rule would be in such cases.

The contention of the Attorney General seems to be supported in some measure by the case of United States v. Smith, 27 Fed. Cases, p. 1139. That was a suit upon the bond of the Secretary of the Territory of Minnesota; and the officer set up in defense an account against the government, including an item for salary due him as Acting Governor during the absence of that officer. There had not occurred a vacancy in the office, as we read the case, but

the Governor was absent from the territory on certain occasions, and, during such absence, the Secretary acted. The statute authorizing him to do so provided that he should discharge the duties of the executive, "in case of the death, removal, resignation or necessary absence of the Governor from the territory." In charging the jury, the District Judge said: "The defendant took the office of Secretary, knowing that, in any of the emergencies specified, the duties of Governor would devolve on him. And the law made no provision for any additional compensation in that event. In assuming the office of Secretary of the Territory, the defendant became bound to act as Governor, if necessary under the law, as fully as he was obliged to discharge any other duty as Secretary. It pertained to the office of Secretary, though not strictly within the legitimate range of its duties. The salary certainly was less than the labor and responsibility required, but this is an evil which this court and jury cannot remedy without usurping legislative power." The learned court moreover held that the item came within the operation of an act of Congress forbidding the allowance to one individual for the salaries of two different offices, on account of his having performed the duties thereof at the same time.

Notwithstanding that the general language of the court might be held to be applicable to the situation of relator, we think it is not a necessary implication that, upon facts like those in the case at bar, the court would have expressed the same opinion respecting the character of the duties of the officer.

Again, in State, etc., v. Heller (N. J.), 42 Atl., 155, it was said, in view of the language of the constitution, that, although the President of the Senate, in case of a vacancy in the office of Governor, exercises the powers and performs the duties of Governor, and receives the emoluments of that office, he does not become "Governor," but that he still holds the office of President of the Senate, with the added duties required of the chief executive imposed upon

him.   He was held to be the "person administering the government," since the constitution in various clauses used the words, "The Governor or person administering the government."   The statute there evidently gave the officer the emoluments of the office, and hence his right thereto was not involved in the case.

We are not altogether satisfied that the question whether the relator is in fact the Governor of the State in the same sense as one regularly elected to that office is material to the determination of his right to the salary of the office.   He is at least the Acting Governor.   The expression both of the statute and constitution is that he "shall act as Governor."   And the statute requires him to issue a proclamation to the effect that he has "succeeded" to the duties and powers of the office, and has assumed such duties and powers.   Moreover, the statute (Sec. 52) refers to the act of the officer in taking upon himself the powers and duties of Governor as an "assumption of office."   And in case such "assumption of office" is made less than twenty days before the next general election of county officers, preceding the next ensuing general election for state officers, the "person acting as Governor" is required to "continue to act as Governor" until the end of the term.   The significance of this requirement is made more manifest when it is remembered that an election for county officers occurs every two years, whereas a regular election for state officers occurs but once in four years; and hence the person so acting as Governor might be required to serve in that capacity more than one-half of the entire term, and until the end thereof; in which event, also, the vacancy, as such, that is for the existing term, would not be filled at all by an election, but the Acting Governor would be succeeded by one elected for a new and full term.

Whether the relator has succeeded to the title of "Governor" or not, it must be conceded, we think, that he may appropriately assume at least the title of "Acting Governor." Possibly that is his correct title, in the performance of ex-

ecutive functions. It is unnecessary, however, to decide that question.

We are not convinced that the duties of Acting Governor are attached to the office of Secretary of State. It seems to us that the more reasonable view is that the person occupying the office of Secretary of State is designated to act as Governor. This view is impressed upon us and strengthened whether we consider the nature of the duties of the two offices, or the legislation concerning them. We have already alluded to the fact that the constitution imposes upon the Legislature the duty of prescribing the duties of Secretary of State, while it enumerates many of the powers and duties of the Governor; and the further fact that, in the chapter defining the duties of the former office, the Legislature omitted any reference to the requirement that the incumbent should in certain contingencies act as Governor. It appears to us to be incontrovertible that the two offices are separate and distinct, each having its own duties and responsibilities. The duties and powers of one do not pertain to, nor are they legitimately connected, with the other office. It is doubtless true that, whenever by law the Secretary is required to attest or countersign any document bearing the signature of the Governor, he continues to do so, and, when necessary, attaches the great seal of the State thereto, notwithstanding that it is the same person who signs in both capacities.

It may be conceded, for the purposes of the case, that in a strictly technical sense the relator is not Governor. But it would not necessarily follow, in our judgment, that the salary of the office is not to be paid to him. To all intents and purposes he is the Governor of the State; and in a constitutional sense he is Acting Governor, at least. As such he is required to perform various duties and is authorized to exercise very great powers, entirely distinct from the duties of his other office; such duties as not only by our written law, but ordinarily, are imposed and conferred solely upon the chief executive officer of a state.

It might also be conceded, without seriously impairing the relator's right to the salary in question, that in a limited sense the office of Governor is vacant. But we are not able to subscribe to the proposition that there is an absolute and unqualified vacancy in the office. That would imply either that there is no one lawfully authorized to perform its duties, or that they are temporarily an adjunct of another office. In State ex rel. v. Henderson, 4 Wyo., 555, Chief Justice Groesbeck, speaking for this court, said: "An office cannot be said to be vacant while any person is authorized to act in it and does so act." That language was employed in determining a question not involved here, viz., the authority of the Governor in a certain case to appoint to an office. We think, and may have something further to say on that subject, that the duties have not become an adjunct of another office. The statute, as already indicated, seems to indicate quite clearly that the Secretary, in entering upon the discharge of the duties, shall assume an office, and that reference is manifestly to some office other than that of Secretary of State. It is a conceded fact and must be that the relator is lawfully authorized to perform the duties of the office of Governor.

We deem it unnecessary to discuss technically the question of vacancy in the office. In the sense that the law contemplates that there shall be an incumbent of the office regularly chosen to that position, it may be admitted that a vacancy has occurred, and continues to exist, which can be filled only through an election by the people. But the office is now supplied in the manner provided by the constitution and statutes with an incumbent who is legally qualified to exercise its powers and perform the duties which pertain to it; and, although such incumbent is merely designated as an Acting Governor, he is for all practical purposes in possession of the office and all of its prerogatives.

In this connection it is difficult to perceive much, if any, distinction between the facts in this case, and where a va-

cancy occurring in an elective office, the Governor or some other competent authority has appointed some person to fill the office until the next general election, at which time the people are required to choose someone to serve out the remainder of the unexpired term. That is the case in the event of a vacancy in the office of Justice of the Supreme Court; and on three occasions there has occurred such a vacancy, which was filled by appointment of the executive until the following general election, when an incumbent for the balance of the unexpired term was elected. In the case of Governor, instead of an appointment by some other officer until an opportunity regularly arrives for the people to signify their preference, the law itself designates a person who shall act.

Under the Constitution of the State of Oregon, in case of the removal of the Governor, or his death, resignation or inability to discharge the duties of the office, the same was made to devolve upon the Secretary of State. In the case of Chadwick v. Earhart, 11 Ore., 389 (4 Pac., 1180), one of the questions as stated in the opinion was whether, when the duties of the office of Governor devolve upon the Secretary of State, he has a right to the salary of the office. The court answered the question in the affirmative. It was said in the opinion: "If the office of Governor continue after the Governor ceases to hold the office under this section; if the office be not vacant, but shall be lawfully filled by one acting therein directly as the agent of the state, and not in the character of deputy of a Governor incumbent, it would seem difficult to distinguish such a person from a Governor of right and in fact." And, again, in response to the argument that the duties of the office of Governor became annexed to the office of Secretary of State, and were discharged as duties incident to the latter office: "In the first place, it is not shown how an office can be vacant, and yet there be a person, not the deputy or *locum tenens* of another, empowered by law to discharge the duties of the office, and who does, in fact, discharge them. It is not ex-

plained how, in such a case, the duties can be separated from the office, so that he who discharges them does not become an incumbent of the office. And, in the second place, how a person can fill the office of Governor without being Governor. It is the function of a public officer to discharge public duties. Such duties constitute his office. Hence, given a public office, and one who, duly empowered, discharges its duties, and we have an incumbent in that office. Such is the case here. The Secretary of State, by force of the function cast upon him, becomes Governor, and consequently entitled to the salary appertaining to the office."

Counsel endeavors to distinguish the Oregon case from the case at bar on account of the provision in the constitution of that state that the office shall "devolve" upon the Secretary of State, while the language of our law is that he shall act as Governor. We fail to observe any material distinction. The same section of the Oregon constitution, in providing for succession in case of the removal, death, resignation or disability of both the Governor and Secretary of State, declared that in such case "the President of the Senate shall act as Governor." And in the case cited, in determining the tenure of office as Governor of the Secretary of State, the court mentioned the possibility of the President of the Senate succeeding to the office, and referred to him in language indicating quite clearly that he would be regarded as Governor, for it was said that he would hold the office of Governor, once incumbent, without reference to his office of President of the Senate; and, also, that he would cease to be President of the Senate when he became Governor. It is evident that the Oregon court itself perceived no distinction between the declaration that the office should devolve and one that a certain person should act as Governor.

In the case of People v. Hopkins, 55 N. Y., 74, it was held that a deputy of the Superintendent of Insurance, upon whom the law imposed the duties of the office during a

vacancy in the principal office and during the absence and inability of the incumbent thereof, was entitled to the salary of a superintendent during the time he discharged the duties of the office. The statutory provision was that the deputy should "possess the powers and perform the duties attached by law to the office of the principal, during a vacancy in such office, and during the absence and inability of his principal." There the deputy was only empowered to perform the duties and possess the powers, etc., during a vacancy in the office. The office was not made otherwise to devolve upon him. Yet he was entitled to the salary. And in this connection it might be pertinent to inquire what considerations ordinarily determine whether or not compensation shall be paid an officer, and the amount thereof. Our own constitution furnishes an answer. It is provided in Section 1 of Article XIV that, "The Legislature shall, from time to time, fix the amount of such salaries as are not already fixed by this constitution, which shall in all cases be in proportion to the value of the services rendered and the duty performed." And in 23 Ency. L., 367 (2d Ed.), salary is defined as "a fixed annual or periodical payment for services, depending upon the amount of service rendered." In fixing a salary to be paid the executive of the State, it would be difficult, we imagine, to show that it was intended by those who framed the fundamental instrument of our state government to bestow the compensation in consideration of the acceptance of the title of Governor. It will hardly be questioned that the salary was intended as compensation for the rendition of services and the performance of duty.

The opinion in the case last above cited possesses further interest in view of the argument made in this case to the effect that the relator should not be allowed the salary because he only acts as Governor and is not Governor in fact. The court in its opinion stated that the statute made the deputy, to all intents and purposes, acting superintendent for the time during which there is no other superintendent,

and referred to certain precedents not judicial, but, as stated, furnished by "able jurists, wise statesmen and rigid economists." It seems that in February, 1828, the office of Governor of New York became vacant by the death of DeWitt Clinton, and that its powers and duties devolved upon the then Lieutenant Governor. The learned judge states that the question arose whether the officer aforesaid was to be regarded as Acting Governor, and entitled to the salary of the office; and it was held by the comptroller that he was to be so regarded and was entitled to the salary. And the same conclusion was reached on a subsequent occasion.

The New York constitution declared that the "powers and duties of the office" should devolve upon the Lieutenant Governor, but the court states that he was regarded as "Acting Governor;" and it is noticeable that not the office, but the *"powers and duties"* of the office, were made to devolve upon him. It will probably be conceded that the powers and duties of the Governor's office have devolved upon the relator in this case.

The Constitution of Nevada provides in case of vacancy in the office of Governor that "the powers and duties of the office shall devolve upon the Lieutenant Governor." · Here, again, we have the "powers and duties;" rather than the "office," devolving, if there is any distinction. It was held by the Supreme Court of Nevada that a Lieutenant Governor upon whom the powers and duties of Governor had devolved, in consequence of the death of the incumbent of that office, was entitled to the salary attached to the office. (State ex rel. v. La Grave, 23 Nev., 216; 45 Pac., 243.) It seems to have been argued in that case that the relator remained Lieutenant Governor, exercising the powers and duties of Governor. In a concurring opinion, Chief Justice Bigelow expressed a doubt as to whether the Lieutenant Governor became "Governor" in the full sense of the term; but he said that he filled the office, not temporarily, but permanently, and that he became, at least, permanent *Acting Governor* for the residue of the term. The learned Chief

Justice referred to the proposition as a general principle of justice and right that, where one legally performs the duties of an office, he should be entitled to the emoluments thereof. And he held that any doubt as to the right of the officer to receive the salary should be resolved in his favor. The question whether upon the assumption of the duties of Governor by the Lieutenant Governor a vacancy was created in the latter office, subsequently came before the same court, and it was held that a vacancy did not exist, but that the officer remained Lieutenant Governor, but invested with the powers and duties of Governor. (State ex rel. v. Sadler, 47 Pac., 450.) Under similar constitutional provisions, the declaration being that the "powers and duties" of the office shall devolve upon the Lieutenant Governor, the Supreme Court of California, in People ex rel. v. Budd, 45 Pac., 1060, say: "It will be seen that in case of a vacancy in the office of Governor the vacancy is not to be filled, but the powers and duties devolve upon the Lieutenant Governor, who does not cease to be Lieutenant Governor." And it was held that he could not appoint a Lieutenant Governor, upon the principle evidently that there would not be a vacancy in the office on account of the assumption by the incumbent of the duties of Governor. And so, in the case at bar, it is not contended on either hand that a vacancy has occurred in the office of Secretary of State. No question of salary was involved in the California case above cited. The language of the court seems, however, to sustain the argument of the Attorney General, that the vacancy in the office of Governor is not filled in consequence of the assumption of its duties by the Secretary of State.

Our views as to the fact of vacancy in the office have in a measure been stated, although, in our opinion, it is immaterial whether there is a technical vacancy or not. We believe it more reasonable to say that the office is to all practical intents and purposes occupied by the officer upon whom the law had imposed its powers and duties; and that at least he is Acting Governor, and as such comes within the meaning and operation of the law prescribing a salary for

the office of Governor. We cannot accept the proposition that the very high and responsible duties of the executive office have been given such a movable character by the law as to be attached in certain contingencies, first to the office of Secretary of State, then, possibly, in succession, to the offices of President of the Senate, Speaker of the House of Representatives, Auditor and State Treasurer. In our judgment, the conclusion more consonant with reason, and the rules governing the interpretation of statutes, is that the duties and powers remain as incident and attached to the office of Governor continually, and that when exercised and performed by either of the officers authorized by law, in case the regular incumbent has ceased to act, they are exercised and performed as the powers and duties of the office of Governor. Indeed, the language of the law clearly so implies, when it requires the designated officer to *act as Governor*. He is required to perform all the service that constitutes the consideration for the salary provided by law. In the absence of statute expressly or by necessary implication forbidding the relator from receiving the compensation attached to both offices, we see no reason why the same should not be paid to him upon his proper and lawful demand.

There is nothing inequitable in this conclusion. The State has duly appropriated the money to pay the salary and the money is in the treasury. The services for which the salary is provided are being performed, and have been performed for the period covered by the claim of the relator here in question. He is required to give attention to the duties of two state offices; his responsibilities are largely increased, and every principle of justice requires that he be compensated. This is recognized in many of the states by an express provision of either constitution or statute allowing the one upon whom the duties of Governor have devolved to be paid the compensation attached by law to the office. The demurrer will be overruled.

CORN, C. J., and KNIGHT, J., concur.